UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEREK L. BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-01927-TWP-DML |
| | ) |
| A. REAVES, *Mrs.*, PLOEGER, *Mrs.* | ) |
| RYAN PATTON, and DEPOSKI, *Officer*, | ) |
| | ) |
| Defendants. | ) |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Ryan Patton, Mrs. A. Reaves, Mrs. Ploeger, and Officer Deposki (collectively, "the Defendants") (Dkt. 68). Also pending are several preliminary motions filed by Plaintiff Derek L. Boyd ("Mr. Boyd")**.** This action is based on Mr. Boyd's allegations that staff members at Heritage Trail Correctional Facility retaliated against him in 2020 for filing grievances and engaging in other activities protected by the First Amendment.  For the reasons stated below, the Court **grants** the Defendants' Motion for Summary Judgment.

**I.   PRELIMINARY MOTIONS**

As an initial matter, the Court will address the preliminary motions that are pending in this case.  On September 15, 2021, the Court denied nine discovery motions filed by Mr. Boyd because they were all untimely. (Dkt. 92 at 1–2)[1].  All nine were filed after the Defendants had already filed their summary judgment motion and at least six weeks after discovery closed.  Thereafter,

---

[1] The Court ruled that Mr. Boyd's discovery motions, Dkts. [72], [78], [79], [80], [81], [82], [83], [84], and [85], were denied as untimely. His renewed Motion to Appoint Counsel, Dkt. [67], was denied without prejudice. The Clerk was directed to strike Mr. Boyd's responses to the summary judgment motion, Dkts. [73], [74], [88], [90], [91]. *See* (Dkt. 92 at 4).

Mr. Boyd's filed a Motion for Extension of Time to Request Discovery Material, (Dkt. 100), and a Motion to Reconsider, (Dkt. 101). These Motions are **denied**. Mr. Boyd states that the discovery deadline "confused" him "because he thought if not provided in Discovery stage evidence could be subpoenaed still closer to trial." (Dkt. 100 at 1.) He also asserts that Defendants' counsel was not initially prompt in producing discovery. (Dkt. 101 at 1.) But the discovery deadline was clearly set out in the pretrial schedule, (Dkt. 31), and Mr. Boyd's filings show that he was aware of the schedule and understood how to request extensions of relevant deadlines. (*See* Dkt. 59.) The Court will not extend the time to complete discovery prior to ruling on the dispositive motions.

Mr. Boyd filed multiple responses to the Defendants' summary judgment motion, plus a motion for judgment on the pleadings, some of which he later asked the Court to strike. His motions to strike, (Dkts. 95) and (Dkt. 107), are **granted**. The **Clerk is directed to strike** the summary judgment response at (Dkt. 93) and the Motion for Judgment on the Pleadings, (Dkt. 104).

## II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is

competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572–73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

### III.  BACKGROUND AND SCOPE OF REVIEW

This case is based on events that took place at Heritage Trail Correctional Facility ("HTCF") in the spring and summer of 2020.  When the Court screened Mr. Boyd's Amended Complaint, it identified plausible First Amendment retaliation claims against four defendants: Investigator Ryan Patton ("Investigator Patton"), Warden Angela Reaves ("Warden Reeves"), Prison Rape Elimination Act ("PREA") Compliance Manager Ploeger ("Ms. Ploeger"), and Disciplinary Hearing Sergeant Deposki ("Sergeant Deposki").

After the Defendants moved for summary judgment, Mr. Boyd filed multiple responses, all of which the Court struck for failure to comply with Local Rule 56-1.  (Dkt. 92 at 2.)  The Court allowed Mr. Boyd to file an amended response and set clear expectations. "The amended response must comply with Local Rule 56-1: It must include a statement of material facts in dispute and set forth all arguments regarding the defendants' summary judgment motion and supporting evidence *in a single document*." *Id.* (emphasis in original).  The Court also set clear consequences for failing to meet these requirements. "If Mr. Boyd fails to file a response that complies with these directions in the time provided, the Court may treat the defendants' summary judgment motion as unopposed." *Id.*

Mr. Boyd's response does not comply with those instructions or the summary judgment rules. Instead of a statement of material facts in dispute, *see* S.D. Ind. L.R. 56-1(b), he states broadly that he disputes every statement in the Defendants' motion except that they were employed at HTCF.  (Dkt. 97 at 2.)  He offers a long statement of facts but few citations to evidence.

Mr. Boyd's response also is not contained in a single document.  He begins with a conventional 17-page response (Dkt. 97).  He then filed "Exhibit Section III: Statements of Material Fact's in Dispute." (Dkt. 97-1 at 1–7.) This is simply a copy of the Defendants' statement

4

of undisputed facts, which Mr. Boyd highlighted to identify assertions that he disputes. Nearly the entire document is highlighted. He next filed three "exhibits," which are handwritten statements by Mr. Boyd assailing specific aspects of the Defendants' motion:

- "Exhibit Section V: Perjury by the Defendant[]s Angela Reaves and Daniela Deposki," (Dkt. 97-1 at 8–17);

- "Exhibit Section VI: Perjury and Retaliation of Janet Ploeger," (Dkt. 97-1 at 18–25); and

- "Exhibit Section VII: Conspiracy by Defendant[]s," (Dkt. 97-1 at 26–39).

Each exhibit is dated August 27 or 30, 2021—weeks before he signed his summary judgment response. Mr. Boyd's handwritten exhibits are followed by twelve pages of documentary evidence. (Dkt. 97-1 at 40–51.) A fourth handwritten exhibit, "Exhibit Section VIII: Criminal Act's," follows. *Id.* at 52–62. Finally, Mr. Boyd offers another 52 pages of documentary exhibits. *Id.* at 63–115.

Although he has filed many documents in opposition to the summary judgment motion, Mr. Boyd offers no discussion explaining how the facts he has asserted would allow a jury to find that the Defendants violated his First Amendment rights. He simply denies the Defendants' statement of facts and offers his own version of the truth.

Mr. Boyd's summary judgment response is little more than a request that the Court "sift through the record and make [his] case for him." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 511 (7th Cir. 2010). But "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (internal quotations omitted). And, as noted above, the Court need not "scour every inch of the record" for a triable issue. *Grant,* 870 F.3d at 572–73.

The Court has reviewed and considered Mr. Boyd's summary judgment response, (Dkt. 97), and evidence he has identified through specific citations. *See* Fed. R. Civ. P. 56(c)(1) ("A

party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to *particular parts* of materials in the record.") (emphasis added).  Mr. Boyd's response explicitly identifies ten actions that he believes the Defendants took in retaliation for his first Amendment activities. The Court has considered only those potentially retaliatory actions in reviewing the Motion for Summary Judgment.

## IV. DISCUSSION OF CLAIMS[2]

To establish a *prima face* case for retaliation on summary judgment, a plaintiff must have evidence to support three elements.  "First, he must show he engaged in protected First Amendment activity.  Second, he must show an adverse action was taken against him.  Third, he must show his protected conduct was at least a motivating factor of the adverse action."  *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

"The standard for determining whether an action is sufficiently adverse to constitute retaliation is well established: it must be 'likely [to] deter a person of ordinary firmness from continuing to engage in protected activity.'"  *Id.* at 880 (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)).  "This is an objective standard; it does not hinge on the personal experience of the plaintiff."  *Id.*

The "motivating factor" requirement "amounts to a causal link between the activity and the unlawful retaliation."  *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).  "Suspicious timing alone will rarely be sufficient to create a triable issue" on the motivating factor element, especially where an alternative motive exists.  *Id.*  To establish that retaliatory animus was a motivating factor in a defendant's retaliatory action, a plaintiff must show, at a minimum, that the defendant was aware of the plaintiff's protected activity.  *See, e.g.*, *Daugherty*, 906 F.3d at 610 (affirming grant

---

[2] Because Mr. Boyd alleges so many retaliatory acts, the Court opts to analyze their merits one-by-one rather than state the facts and then revisit them in a separate legal analysis.

6

of summary judgment when inmate presented only "vague and confusing testimony that [the inmate], at some point, named [the defendant] in a grievance" but "no evidence about what the grievance said or whether [the defendant] even saw or knew about it").

If the plaintiff is able to establish the elements of a retaliation claim, "'the burden shifts to the defendant to show that the harm would have occurred anyway.'" *Hawkins v. Mitchell,* 756 F.3d 983, 996 n.10 (7th Cir. 2014) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012) (cleaned up). "And if the defendant does this, 'the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus.'" *Id.* (quoting *Thayer*, 705 F.3d at 252). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer the proffered reason is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

A.   **Referral to Mental Health Professional**

In early June 2020, Mr. Boyd wrote a grievance alleging that Officer Byrd glanced at him in the shower. (Dkt. 70-7 at 7.) Mr. Boyd reported that he was a survivor of sexual assault and that the incident "left him confused and distraught." *Id*. The grievance itself does not appear in the record, but Mr. Boyd has not contested the accuracy of this summary.

Investigator Patton received the grievance and began investigating Officer Byrd's conduct. (Dkt. 70-7.) On June 4, 2020, he sent the following message to the mental health staff by email:

> Please schedule a mental health evaluation for Derek Boyd 273507 due to a PREA allegation related to voyeurism. I know it's not sexual abuse, but Boyd stated he was "distraught" due to being a past abuse victim.

*Id.* at 8. Mr. Boyd argues that Investigator Patton overstepped his authority by sending this message, made it uncomfortable for him to explain the incident to the mental health therapist, and "really upset" him. (Dkt. 97 at 5.)

No reasonable jury could find that Investigator Patton's email was unconstitutional retaliation. The Court is unaware of any basis for deeming an attempt to arrange mental health treatment for a distraught inmate an adverse action. While Mr. Boyd did not appreciate Investigator Patton's efforts, he has not demonstrated that inmates of ordinary firmness would likely be deterred from filing a PREA complaint if he knew he would be referred for mental health counseling. *See Holleman*, 951 F.3d at 880. To the contrary, it is more inferable that inmates who have suffered trauma would hope their complaints would be taken seriously and that they would be promptly connected to help. Investigator Patton is entitled to summary judgment on this claim.

**B.**     **Shakedown of Housing Unit**

Mr. Boyd alleges that Sergeant Deposki conducted a shakedown of his housing unit on June 12, 2020, and ransacked his neighbors' cells without documenting what was confiscated. (Dkt. 97 at 7.) He states this was an act of retaliation because Sergeant Deposki was "basically trying to get all [his] neighbor's [*sic*] to turn on him." *Id.* Regardless, Mr. Boyd has not identified what First Amendment activity he believes motivated Sergeant Deposki to take that action, and the Court will not guess. *See Cisneros*, 846 F.3d at 978 ("perfunctory and undeveloped arguments. . . are waived."). No reasonable jury could find a First Amendment violation based on the June 12, 2020 search. Sergeant Deposki is entitled to summary judgment on this claim.

8

### C.     30-Day Grievance Restriction

Around June 10, 2020, Mr. Boyd began drafting grievances on behalf of other inmates. (Dkt. 97 at 6.)  On June 15, 2020, a staff member notified Warden Reaves that Mr. Boyd had filed 15 grievances and 10 appeals for himself over the last six months, plus numerous grievances for other inmates.  (Dkt. 97-1 at 111.)  The staff member speculated that Mr. Boyd may be "bartering" with inmates in exchange for his grievance-writing services and suggested a grievance restriction may be appropriate.  *Id*.  She also noted that she interviewed Mr. Boyd regarding his voluminous grievances, that he appeared uninterested in resolving his concerns administratively, and that he often did not read grievance responses before initiating appeals.  *Id.* at 111–12.  The email noted that some of Mr. Boyd's grievances concerned COVID-19 and access to the law library, but it offers no details of the contents of his grievances.

According to Indiana Department of Correction ("IDOC") policy, a facility warden may temporarily restrict an inmate from filing grievances if he or she determines that the inmate is abusing the grievance process.  IDOC, *Offender Grievance Process*, Policy and Administrative Procedure No. 00-02-301, at § IX (Sept. 1, 2020).[3]  A first-time restriction must be limited to 30 days, and the inmate may not be restricted from filing emergency or PREA grievances.  *Id.*

Mr. Boyd states that Warden Reaves placed him on a 30-day grievance restriction on June 16, 2020.  (Dkt. 97 at 8.)  Unfortunately, the record does not include a copy of her decision.

Grievance restrictions on inmates who abuse prison grievance systems are not always unconstitutional.  *Cf. Jacobs v. Gerber*, 403 F. App'x 67, 68–69 (7th Cir. 2010) (limiting the number of grievances an inmate could file weekly did not deny right to access the courts.).

---

[3]Available at https://search.in.gov/s/redirect?collection=agencies2&url=https%3A%2F%2Fwww.in.gov%2Fidoc%2Ffiles%2F00-02-301-Offender-Grievance-Process-9-1-2020.pdfOffender-Grievance-Process&auth=HDdUGqQCubyf%2BVkeB5Gc4w&profile=idoc&rank=1&query=grievance).

Mr. Boyd offers no reason to conclude that the restriction imposed against him violated the First Amendment.

Mr. Boyd offers no evidence that Warden Reaves imposed the grievance restriction based on retaliatory animus except that it was a consequence for filing grievances. This is a "suspicious timing" argument—he was punished after filing grievances, so there must be a causal link between his grievances and the restriction. *Manuel*, 966 F.3d at 680 (7th Cir. 2020). But "[s]uspicious timing alone will rarely be sufficient to create a triable issue" on the motivating factor element, especially where an alternative motive exists. *Id*. Warden Reaves had a non-retaliatory motive for the grievance restriction: Mr. Boyd was filing grievances constantly and may not have been using the system in good faith. And there is no evidence that Warden Reaves knew the contents of Mr. Boyd's grievances or any other facts that would support a finding of retaliatory animus. No evidence would allow a jury to reasonably conclude that Mr. Boyd was placed on a grievance restriction as an act of retaliation or for any reason other than that his grievances were excessive. Warden Reaves is entitled to summary judgment on this claim.

**D.** **June 19, 2020 Search**

As PREA Compliance Manager, Ms. Ploeger met weekly with Mr. Boyd after he submitted his PREA complaint. (Dkt. 70-10 at ¶¶ 5, 10.) During their meeting on June 19, 2020, Mr. Boyd complained that Investigator Patton should not have emailed the mental health staff concerning his PREA complaint. (Dkt. 97 at 8.) Shortly after this meeting, Investigator Patton arrived at Mr. Boyd's Recovery While Incarcerated ("RWI") class, searched and interrogated Mr. Boyd in view of his teacher and classmates, and then searched Mr. Boyd's cell. (Dkt. 97 at 9.)

Mr. Boyd implies that Investigator Patton conducted the June 19, 2020 search in retaliation for his complaints to Ms. Ploeger that Investigator Patton had emailed the mental health staff. As

10

an initial matter, it is not clear that Mr. Boyd's comment to Ms. Ploeger was protected First Amendment speech.  Moreover, there is no evidence that Investigator Patton knew of Mr. Boyd's comments on June 19, 2020.  Mr. Boyd states that Ms. Ploeger "immediately call[ed] Patton" as soon as his meeting with her ended, but he does not support that assertion with evidence or explain how he knows that Ms. Ploeger called Investigator Patton.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Even if the Court assumes that Investigator Patton knew of the comments, Investigator Patton has articulated a non-retaliatory reason for his search: Mr. Boyd revealed that he had a copy of the email to the mental health staff in his possession, and Ms. Ploeger, Warden Reaves, and Investigator Patton determined that this violated prison rules and endangered the mental health staff.  (Dkt. 70-5 at ¶¶ 13–14; Dkt. 70-10 at ¶ 9.)  Mr. Boyd has not presented evidence that would allow a jury to conclude that this explanation was a lie. *Zellner*, 639 F.3d at 379.  Indeed, Mr. Boyd cites no evidence at all in this portion of his summary judgment response. (*See* Dkt. 97 at 9.)  Accordingly, Investigator Patton is entitled to summary judgment on this claim.

### E. June 22, 2020 Interview

On June 20, 2020, the day after Investigator Patton interrogated and searched him, Mr. Boyd called a PREA victim advocate telephone number "to report Ryan Patton and [the] Facility [sic]."  (Dkt. 97 at 9.)  He believes the number he called actually connected to Investigator Patton's telephone line.  *Id.*  Mr. Boyd did not speak directly to Investigator Patton on June 20, 2020, but left a message.  *See id.* at 10 (stating Investigator Patton "was told a report on him to # 80 was made" and responded, "Oh well I will go listen to that in a minute!").

11

Investigator Patton interviewed Mr. Boyd on June 22, 2020. Mr. Boyd characterizes the encounter as a "forced PREA interview" that took place in Sergeant Deposki's office. (Dkt. 97 at 10.) Investigator Patton testified that the purpose of the interview was to question Mr. Boyd about filing grievances on behalf of other inmates and his suspicion that he was receiving commissary items from those inmates in exchange for his services. (Dkt. 70-12 at 3.) Mr. Boyd states that the interview "was very uncomfortable." (Dkt. 97 at 10.)

Mr. Boyd does not state what protected First Amendment activity he believes motivated this interview. He implies that it was prompted by the message he left on June 20, 2020 "to report Ryan Patton and [the] Facility [sic]." (Dkt. 97 at 9.) But Mr. Boyd does not provide any information regarding what he stated in that message, so no evidence demonstrates that it fell under the First Amendment's protections. Moreover, Mr. Boyd's account of the June 22, 2020 interview indicates that Investigator Patton first learned about the message when Mr. Boyd told him *during the interview*. *Id.* at 10. A jury could not reasonably find that the June 22, 2020 interview was motivated by retaliatory animus, and Investigator Patton is entitled to summary judgment on this claim.

F. **Conduct Report and Disciplinary Case STP 20-06-0066**

According to Investigator Patton, Mr. Boyd admitted during the June 22, 2020 interview that he received commissary items from inmates for whom he wrote grievances. Dkt. 70-12 at 3. Based on that admission, Investigator Patton wrote a conduct report on June 22, 2020[4] accusing Mr. Boyd of engaging in an unauthorized financial transaction. *Id.* Sergeant Deposki conducted a disciplinary hearing on July 7, 2020 and found Mr. Boyd guilty. (Dkt. 70-12 at 1.) She assessed

---

[4] Mr. Boyd alleges that Investigator Patton wrote the conduct report on June 30, 2020, and "back dated" it to June 22, 2020, but he again provides no evidence to support that allegation or any information to support an inference that he has personal knowledge of when the report was written. (*See* Dkt. 97 at 12.)

12

sanctions, including a 30-day suspension of commissary privileges, a loss of 90 days' earned credit time, and a demotion in credit-earning class. *Id.*

On June 25, 2020, between Investigator Patton's completion of the conduct report and Sergeant Deposki's disciplinary hearing, Mr. Boyd and two other inmates attempted to mail a civil rights complaint to this Court. (Dkt. 97 at 11.) The mailing included the inmates' medical records. Investigator Patton confiscated the outgoing mail because he was concerned that the inmate who placed the complaint in the mail possessed Mr. Boyd's medical records. (Dkt. 70-5 at ¶ 17.) Investigator Patton consulted with Warden Reaves, then returned the complaint to the inmate who placed it in the mail. *Id.* Mr. Boyd states that Sergeant Deposki returned the complaint, but he provides no evidence to support that allegation and does not explain how he has personal knowledge regarding who returned the complaint to the other inmate. (*See* Dkt. 97 at 11.)

Mr. Boyd alleges that he was charged with a disciplinary violation in retaliation for "the 6-20-20 # 80 reporting, the 6-11-20 Email attatched [sic] to Appeal of Grievance 113935, the 'Retaliation Meeting' report's [sic] from 6-13-20 [and] 6-19-20." (Dkt. 97 at 12.) But Mr. Boyd again provides no evidence or even argument to support an inference that Investigator Patton's conduct report was motivated in any part by retaliatory animus. *See id.* Again, the Court is left only with the fact that the conduct report came after Mr. Boyd's complaints, and Mr. Boyd has not demonstrated why this should be the rare case where a retaliation claim should survive summary judgment based on "[s]uspicious timing alone." *Manuel*, 966 F.3d at 680.

Mr. Boyd also asserts that Sergeant Deposki retaliated against him by imposing "maximum sanctions" for his disciplinary violation. (Dkt. 97 at 13.) He states that she witnessed the search of his cell on June 12, 2020, and Investigator Patton's confrontation with him on June 22, 2020, but those are actions by staff members, not protected activities by Mr. Boyd. No evidence supports

13

his contention that Sergeant Deposki knew of the lawsuit he attempted to mail on June 25, 2020, or his related assertion that she "knew Plaintiff's were suing for 'thousand's of dollar's'" [sic]. *Id.* at 12, 13. If such evidence exists, Mr. Boyd has not cited it in support of his arguments, and "undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Cisneros*, 846 F.3d at 978.

No evidence would support a jury in finding that disciplinary case STP 20-06-0066 was motivated by protected First Amendment activity. The Defendants are entitled to summary judgment on these claims.

### G.  June 25, 2020 Confiscation of Legal Mail

Mr. Boyd argues that Investigator Patton's and Warden Reaves' temporary confiscation of his outgoing legal mail on June 25, 2020 was "long enough to copy, read and plan retaliation." (Dkt. 97 at 11.) If Mr. Boyd believes that they confiscated the legal mail as an act of retaliation for previous First Amendment activities, he does not explain how in his summary judgment response, and the Court will not "make [that] case for him." *5443 Suffield Terrace*, 607 F.3d at 511. To the extent a retaliation claim is based on the confiscation of Mr. Boyd's outgoing legal mail, it fails, and the Defendants are entitled to summary judgment.

### H.  Removal from Recovery While Incarcerated (RWI) Program

Next, Mr. Boyd alleges that Investigator Patton "was contacting RWI to have a formal meeting with his teacher, Mrs. Lowe, and Ms. Cole, the education director, to remove him from RWI based on his retaliatory STP-20-06-0066 write up." (Dkt. 97 at 14.) Investigator Patton denies that he removed Mr. Boyd from the RWI program or directed anyone else to do so. (Dkt. 70-1 at 7.) Mr. Boyd alleges that Mrs. Lowe announced in front of the entire RWI class that Investigator Patton called her to get him removed from the program. *See id.*; Dkt. 97 at 14. But

Mrs. Lowe is not a defendant, and Mr. Boyd's recollection of her announcement is inadmissible hearsay. Fed. R. Evid. 801(c), 802. Thus, a jury would not have any evidence from which to infer that Investigator Patton retaliated against Mr. Boyd by attempting to have him removed from the RWI program. Investigator Patton is entitled to summary judgment on this claim.

**I.    Statement to Gang Members**

Mr. Boyd alleges that Investigator Patton approached a group of inmates on July 13, 2020, many of whom were "gang members," and told one of them, "you can thank Derek Boyd for not getting your job back." (Dkt. 97 at 14.) Investigator Patton denies this account. (Dkt. 70-1 at 7.) Mr. Boyd does not state that he was present for this interaction, and he does not provide any other evidence to support an inference that he has personal knowledge of it. *See* Fed. R. Evid. 602.

No admissible evidence supports Mr. Boyd's allegations concerning Investigator Patton and the gang members. A jury would have no evidence on which to decide such a claim in Mr. Boyd's favor. The claim fails, and Investigator Patton is entitled to summary judgment.

**J.    Second Conduct Report and Disciplinary Case STP 20-07-0087**

Mr. Boyd told Ms. Ploeger about Investigator Patton's statement to the gang members during weekly PREA meetings on July 16 and 23, 2020. (Dkt. 97 at 15.) During their July 23, 2020 meeting, Mr. Boyd told Ms. Ploeger that he was in danger because of Investigator Patton's conduct, but he would fight to protect himself if necessary. (Dkt. 70-13 at 2.) Mr. Boyd also recounted fights and violence in which he had previously been involved. *Id.* Ms. Ploeger felt unsafe and believed Mr. Boyd was threatening her, so she documented the meeting in a conduct report. (Dkt. 70-10 at ¶¶ 12–16; Dkt. 70-13 at 2.) Mr. Boyd was charged and convicted in another prison disciplinary case and punished with another suspension of commissary privileges, loss of earned credit time, and demotion in credit-earning class. (Dkt. 70-13 at 1.)

Although Mr. Boyd describes his meeting with Ms. Ploeger and acknowledges his subsequent disciplinary case, he does not state what First Amendment activity he believes motivated her to submit the conduct report. He likewise makes passing references to additional adverse actions, including a "use of force" by an officer and a transfer to a different prison. (Dkt. 97 at 15.) But Mr. Boyd does not state what First Amendment activity provoked those actions. And he certainly does not present any evidence or even argument explaining the causal connection between the adverse actions and his speech. Again, the Court will not "make [that] case for him." *5443 Suffield Terrace*, 607 F.3d at 511. Retaliation claims based on disciplinary case STP 20-07-0087 and subsequent adverse actions fail, and the Defendants are entitled to summary judgment.

## V. CONCLUSION

The Court has empathy for Mr. Boyd and the challenges he faced while at Heritage Trail Correctional Facility, however, he has failed to meet his burden of showing that there are genuine disputes of material fact such that a reasonable jury could return a verdict in his favor. Therefore, for the reasons explained above, the Defendants' Motion for Summary Judgment, Dkt. [68], is **GRANTED**. Mr. Boyd's Motion for Extension of Time to Request Discovery Material, Dkt. [100], and his Motion to Reconsider, Dkt. [101], are **DENIED**. His Motions to Strike, Dkts. [95] and [107], are **GRANTED**. The **Clerk is directed to strike** the summary judgment response at Dkt. [93] and the Motion for Judgment on the Pleadings, Dkt. [104].

This action is dismissed. The Clerk is directed to enter final judgment consistent with this Entry and the screening entries, Dkts. [14] and [48].

SO ORDERED.

Date: 3/2/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Derek L. Boyd, #273507
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com